UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRIS BENNETT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:14-cv-02408 |
| | ) JUDGE CRENSHAW |
| HIGHLAND GRAPHICS, INC. and RON WALL, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Plaintiff's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on Back Pay Damages (Doc. No. 267); (2) Plaintiff's Motion for Leave to File Reply (Doc. No. 281); (3) Plaintiff's Motion for Liquidated Damages and Pre-judgment Interest (Doc. No. 269); (4) the Motion for Renewed Judgment [sic] as a Matter of Law (Doc. No. 275) filed by Highland Graphics, Inc. and Ron Wall (referred to collectively herein, in the singular, as "Highland"); and (5) Defendants' Motion for Leave to File Reply (Doc. No. 287).

As an initial matter, both motions for leave to file a reply brief (Doc. Nos. 281, 287) are **GRANTED**, and the Clerk is **DIRECTED** to file separately the proposed reply briefs attached to the motions. The Court has considered the proposed replies in ruling on the motions, all of which are fully briefed and ripe for review.

**I. Plaintiff's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on Back Pay Damages**

Plaintiff Chris Bennett renews his motion for judgment in his favor as a matter of law on Highland's affirmative defense of failure to mitigate the damages related to his FLSA retaliation

claim, under Rule 50(b) of the Federal Rules of Civil Procedure. He also requests a new trial solely on the issue of back pay damages under Rule 59(a).

### A. Standard of Review

The Court may grant a Rule 50(b) motion for judgment as a matter of law only if, "when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." Rhinehimer v. U.S. Bancorp Investments, Inc., 787 F.3d 797, 804 (6th Cir. 2015) (quoting Barnes v. City of Cincinnati, 401 F.3d 729, 736 (6th Cir. 2005)). "The evidence should not be weighed, and the credibility of the witnesses should not be questioned. The judgment of [the] court should not be substituted for that of the jury." Id. (quoting Balsley v. LFP, Inc., 691 F.3d 747, 757 (6th Cir. 2012)). "In other words, the decision to grant judgment as a matter of law . . . is appropriate whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." Jackson v. FedEx Corp. Servs., 518 F.3d 388, 392 (6th Cir. 2008) (citation omitted). In ruling on a Rule 50(b) motion, the Court may allow the verdict to stand, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

Rule 59(a)(1)(A) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." "The language of Rule 59(a) has been interpreted to mean that a new trial is warranted when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings

being influenced by prejudice or bias." E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1066 (6th Cir. 2015) (internal quotation marks and citations omitted).

### B.     *Timeliness of Rule 50(b) Motion*

A party may submit a Rule 50(a) motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If the court denies relief on the basis sought, the movant may renew the motion no later than 28 days after entry of judgment. Fed. R. Civ. P. 50(b). Here, the question is whether Bennett's Rule 50(a) motion was timely, such that a Rule 50(b) motion was proper at all.

Bennett's Rule 50(a) motion for judgment in his favor on the affirmative defense of failure to mitigate was filed on March 23, 2017, after closing arguments but before the jury had been charged. (See Doc. Nos. 243 (motion), 244 (memorandum).) The motion followed an in-court discussion regarding Highland's proposal to add additional language to the mitigation instruction already included in the jury charge. Highland asserts that the Rule 50(a) motion was not timely because it was filed after closing arguments rather than after the close of proof. It also claims that the Rule 50(a) motion did not put it on notice of the arguments raised in the Rule 50(b) motion, because Bennett "did not mention any cases in support of the argument promoted . . . in his post trial Rule 50(b) [motion]." (Doc. No. 279, at 3–4.) Finally, it contends that, because Bennett did not "raise the issue at the close of Defendants' proof, Defendants were not aware (or on notice) that Plaintiff Bennett was making his own Rule 50(a) motion when filing his Motion for Judgment as a Matter of law at the same time as the Defendants' request for an instruction on self-employment." (Doc. No. 279, at 4.)

Highland's contention that the motion is untimely fails. Prior to 2006, Rule 50 contained language requiring that a Rule 50(a) motion be made at the close of all the evidence, see Fed. R.

3

Civ. P. 50 advisory committee's note on 2006 Amendment, but this requirement was modified to allow a Rule 50(a) motion to be made "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). Highland cites to no precedent establishing that a Rule 50(a) motion, under the rule's current language, is untimely if presented after closing arguments.

Highland's other arguments are likewise without merit. Bennett filed a written motion, docketed in the Court's electronic filing system, styled, "Motion for Judgment as a Matter of Law as to Defendants' Defense that Plaintiff Failed to Mitigate His Damages." (Doc. No. 243.) The first line of the motion specified that it was brought pursuant to Rule 50(a). The Certificate of Service serves as proof that it was served electronically on defense counsel on the day of its filing, March 23, 2017. (Doc. No. 243, at 3.) The Rule 50(a) motion cross references the contemporaneously filed brief. (Id.) In the brief, Bennett raises the same arguments and cites to most of the same cases referenced in his current Rule 50(b) motion. (See Doc. No. 244.) In short, it is clear that the timely Rule 50(a) motion put Highland on notice of the issue raised in the Rule 50(b) motion and that the Rule 50(b) motion is simply a renewal of an argument raised in the Rule 50(a) motion.

### C. Discussion

Bennett argues now, as he did in his initial Rule 50(a) motion, that he is entitled to judgment as a matter of law in his favor on Highland's affirmative defense of failure to mitigate damages, because Highland did not introduce any evidence from which the jury could conclude that comparable employment was available to Plaintiff after his retaliatory termination. He contends that, as a result, he is entitled to a new trial on the issue of damages. Highland argues in response that the $5,000 awarded to Bennett by the jury is reasonable, because the jury evidently concluded that Bennett removed himself from the job market by going into business for himself

immediately following his departure from Highland and that a new trial is not warranted. (Doc. No. 278, at 1, 2.)

Damages for violation of the anti-retaliation provisions of the FLSA are controlled by 29 U.S.C. § 216(b), which provides in pertinent part:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

"The purpose of a back pay award is to 'restore the employee to the status quo he would have enjoyed if the discriminatory discharge had not taken place.'" Bohannon v. Baptist Mem'l Hosp.–Tipton, No. 08-2220-STA, 2010 WL 1856548, at *4 (W.D. Tenn. May 7, 2010) (quoting Hawley v. Dresser Indus., Inc., 958 F.2d 720, 725 (6th Cir. 1992)).

Although the FLSA, unlike Title VII, does not expressly contain a provision requiring an employee subjected to a retaliatory termination to mitigate his damages, courts have imported such a requirement into the cause of action. See, e.g., Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 880 (2d Cir. N.Y. 1988) (presuming duty to mitigate in FLSA case). Neither party disputes that an employee who seeks back pay as damages has a duty to mitigate his damages by seeking other comparable employment. The defendant bears the burden of pleading and proving the affirmative defense of failure to mitigate, and the burden arises "[o]nce a claimant establishes a prima facie case and presents evidence on the issue of damages." Rasimas v. Mich. Dep't of Mental Health, 714 F.2d 614, 623 (6th Cir. 1983).

The Court instructed the jury on mitigation of damages as follows:

> Under the law, a plaintiff must make reasonable efforts to minimize or reduce his damages for loss of compensation by seeking equivalent employment. This is called mitigation of damages.

5

The reasonableness of a plaintiff's effort to secure substantially equivalent employment must be evaluated in light of the plaintiff's background, experience, and the relevant job market. The burden of proof is on the employer to prove that the plaintiff failed to mitigate his damages. The employer satisfies its burden by establishing that there were substantial [sic] equivalent positions available in the area and that the plaintiff did not use reasonable care and diligence in seeking such positions. Self-employment, if it is undertaken in good faith, and as a reasonable alternative to seeking other comparable employment, may be considered permissible mitigation.

If you find that

1. Plaintiff did not take reasonable actions to reduce his damages, and

2. Plaintiff reasonably might have found comparable employment if he had taken such action,

then you should reduce any amount you might award to Plaintiff for lost wages and benefits by the amount he reasonably would have earned during the period for which you are awarding such damages.

(Trial Tr. Vol. IV, Doc. No. 261, at 25.)

The plaintiff does not contend that the jury instruction constituted an incorrect statement of law. Instead, he argues that the court should not have instructed the jury on mitigation of damages at all, because the defendant failed to present any evidence that the plaintiff failed to mitigate damages. He further insists that the jury award is perplexing and inconsistent insofar as the jury found in his favor on his retaliatory discharge claim but awarded him only $5,000 in back-pay damages—two weeks' of pay—rather than the back pay for more than two years that he sought. He argues that the only explanation for the amount of the award is that the jury concluded that he had failed to mitigate damages, despite Highland's failure to put on proof of failure to mitigate.

Bennett testified that upon being terminated, because he is a Canadian citizen and his immigration status in the United States was directly tied to employment, he made immediate plans to sell his house and move his family back to London, Ontario. He testified that he briefly

6

searched for jobs, but that the job market in Canada has far fewer executive-level openings than in the United States that would be comparable to his job with Highland. He claimed that, when he was unable to identify any available comparable positions, he and his wife went into business for themselves. (Trial Tr. Vol. II, Doc. No. 259, at 169–70.)

As Highland points out, however, Bennett received his last pay check from Highland on Saturday, December 6, 2014. On Sunday, December 7, he submitted a domain name application for his new business, Northern Home Accents. (Doc. 259, at 223.) On Monday, December 8, 2014 the domain name was registered. (Id.) On Wednesday, December 10, 2014, Bennett incorporated his new business, Northern Home Accents, in Canada. (Id.) Highland argues now, as it did at trial, that Bennett failed to mitigate his damages by taking himself out of the work force and going into business for himself. The Sixth Circuit has held that "[s]elf-employment, if it is undertaken in good faith and is a reasonable alternative to seeking other comparable employment, may be considered permissible mitigation." Taylor v. Invacare Corp., 64 F. App'x 516, 523 n.9 (6th Cir. 2003) (quoting Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 696 (2d Cir. 1998)).

Here, however, in light of the timing of events, the jury could have found that Bennett's removal of himself from the job market was not in good faith and that his plans to start his own competing business predated his departure from Highland. The evidence in the record also reasonably permitted the jury to find that Bennett, if he had not been retaliatorily discharged, would have soon left on his own anyway to begin the new business. As indicated above, the purpose of back pay damages is to restore the plaintiff to "the status quo he would have enjoyed if the discriminatory discharge had not taken place.'" *Bohannon*, 2010 WL 1856548, at *4. The jury could have believed that the "status quo" in this case was Bennett's decision to start a

7

competing business for which it would have been inequitable to require Highland to bear the start-up and investment costs. The jury may well also have found that awarding damages in excess of $5,000 would have amounted to a windfall to Bennett, in light of his investment in his new business and expectation of an eventual substantial return on that investment.

In sum, the Court finds that the instruction on mitigation of damages was a correct statement of the law and that there was not a "complete absence of . . . proof" on the issue of mitigation. Rhinehimer, 787 F.3d at 804. Rather, there is sufficient evidence in the record to permit the jury to find that the plaintiff made no effort to find a comparable job and instead immediately proceeded with preconceived plans to pursue his own business venture.

The Court therefore **DENIES** the plaintiff's Rule 50(b) motion for judgment in his favor on the issue of the affirmative defense of failure to mitigate damages and **DENIES** the motion for a new trial on the issue of damages. (Doc. No. 267.)

## II.    Plaintiff's Motion for Liquidated Damages and Pre-judgment Interest

Under 29 U.S.C. § 216(b), when an employer terminates an employee for seeking to vindicate his rights under the FLSA and the jury awards the employee back pay, the Court may award an equal amount as liquidated damages. Blanton v. City of Murfreesboro, 856 F.2d 731, 734 (6th Cir. 1988). Unlike liquidated damages for minimum wage or overtime violations, liquidated damages for FLSA retaliation claims are not presumed to be mandatory. Instead, the district court has broad discretion to liquidate such back wages, based on whether liquidation is "appropriate to effectuate the purposes of section 215(a)(3)" of the FLSA. Id. (citing 29 U.S.C. § 216(b)).

The Court finds under the circumstances presented here that an award of liquidated damages in the amount of $5,000 is appropriate to effectuate the purposes of § 215(a)(3).

Specifically, no front pay award has been issued, the amount of damages is low, and the plaintiff has had to wait several years to recover even the small amount awarded by the jury. The motion for liquidated damages (Doc. No. 269) in the amount of $5,000 is therefore **GRANTED**.

Bennett also moves for interest at the statutory rate of 10% on the amount awarded on his unjust enrichment claim, or $1,818.15. "Where state law claims come before a federal court on supplemental jurisdiction, the award of prejudgment interest rests on state law." *Mills v. River Terminal Ry. Co.*, 276 F.3d 222, 228 (6th Cir. 2002); *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 333 (6th Cir. 2007).

Under Tennessee law, the award of prejudgment interest, as an element of, or in the nature of damages, is permitted in accordance with the principles of equity at a rate not to exceed 10% per annum. See Tenn. Code Ann. § 47-14-123. An award of prejudgment interest is within the trial court's discretion, and the Tennessee Supreme Court has established that equity is the guiding principle for exercising that discretion: "Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." Myint v. Allstate Ins. Co., 970 S.W.2d 920, 927 (Tenn. 1998). "[T]he purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." Id. "Tennessee courts have identified six factors to aid trial courts in deciding whether prejudgment interest is fair and equitable: (1) promptness in commencing the claim, (2) unreasonable delay of the proceedings, (3) abusive litigation practices, (4) certainty of the existence of an underlying obligation, (5) certainty of the amount due, and (6) previous payment for the lost time value of the money." FLSmidth Inc. v. Fiber Innovation Tech., Inc., 626 F. App'x 625, 630 (6th Cir. 2015) (citing Poole v. Union Planters Bank, N.A., 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010)).

Bennett points out that his employment was terminated in November 2014 and this matter went to trial in March 2017; for ease of calculation, however, he seeks only 24 months of prejudgment interest. He argues that he is entitled to prejudgment interest because: (1) the amount owed to him based on his agreed-upon salary has always been reasonably certain; (2) Tennessee law favors "awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds" (Doc. No. 270, at 7 (quoting Scholz v. S.B. Int'l, Inc., 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000)); and (3) he was not dilatory in seeking relief, did not unreasonably delay proceedings, and has not otherwise been compensated for the lost time value of his money. He also asserts that interest at the rate of 10% is reasonable and has been upheld in recent opinions, including FLSmidth, supra.

In response, Highland argues only that it was not unjustly enriched, the jury's determination to the contrary notwithstanding, and that the rate of 10% is inequitable in light of the fact that the Wall Street Journal average prime rate between the filing of the complaint in December 2014 through March 2017 was 3.44%.

The Court finds that it is equitable in this case to award prejudgment interest to compensate Bennett for two years' loss of the use of funds. Bennett promptly pursued his interests and has not engaged in abusive or dilatory litigation practices, and the amount of the damages, while not precisely calculable, was reasonably certain. In light of low prevailing interest rates during the relevant time frame, however, the Court will exercise its discretion to award interest at the rate of 5% rather than 10%. Accord Lativafter Liquidating Trust v. Clear Channel Commc'ns, Inc., 345 F. App'x 46, 52 (6th Cir. 2009) (affirming the district court's award of prejudgment interest at the rate of 4.66%, the actual average rate during the relevant time frame). The Court finds that interest at this rate, rather than the lower actual rate, is

equitable in light of the fact that the plaintiff has already reduced the amount of time for which he seeks prejudgment interest.

The Court therefore **GRANTS IN PART** the motion for prejudgment interest (Doc. No. 269) and **AWARDS** prejudgment interest in the amount of **$909.08**.

### III. Defendants' Renewed Motion for Judgment as a Matter of Law

In its motion and supporting memorandum (Doc. Nos. 275, 276), Highland argues that: (1) it is entitled to judgment as a matter of law on the retaliatory discharge claim, because the evidence presented at trial was not sufficient to allow reasonable minds to conclude that an adverse employment action occurred or that there was a causal connection between the alleged adverse action and Bennett's lawyer's letter alleging FLSA violations; (2) it is entitled to judgment as a matter of law on the unjust enrichment claim, because the claim is preempted by the FLSA as a matter of law and should never have been presented to the jury; and (3) alternatively, it is entitled to a new trial on the issue of unjust enrichment, because the Court erred as a matter of law in failing to instruct the jury on the affirmative defense of unclean hands.

The Court finds, first, that the evidence presented at trial was legally sufficient to permit the jury to find that Bennett was discharged in retaliation for having submitted, through an attorney, a letter accusing Highland of violating the FLSA. The jury obviously credited Chris Bennett's testimony and discredited that of Ron Wall regarding the events following Wall's receipt of the attorney's letter. The jury reasonably concluded that Bennett was discharged when his access to email and company accounts was cut off following Wall's receipt of the lawyer's letter, and when Wall refused to respond to Bennett's inquiries about the status of his employment.

Second, the Court has already determined that the state law unjust enrichment claim was

11

not duplicative of and therefore not preempted by the FLSA. (See Doc. No. 150, at 26–27 (denying Defendants' Motion for Summary Judgment on the unjust enrichment claim).) Accord Cannon v. Citicorp Credit Services, Inc., No. 2:12-CV-88, 2014 WL 1267279, at *5 (E.D. Tenn. March 26, 2014); Woodall v. DSI Renal, Inc., No. 11-2590, 2012 WL 1038626, at *6 (W.D. Tenn. March 27, 2012). The Court will not reconsider that determination.

Third, the Court denied Highland's request for a jury instruction on the defense of unclean hands on the basis that Highland had not raised that defense in the Joint Pretrial Order, which expressly amended the pleadings to conform to the Order. (Doc. No. 221, at 1; see id. at 7–9 (identifying Defendants' Issues for the Court and Issues for the Jury).) Nor did Highland raise the defense of unclean hands in its Answer. (Doc. No. 20.) "Failure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense." Horton v. Potter, 369 F.3d 906, 911 (6th Cir. 2004) (citing Haskell v. Washington Twp., 864 F.2d 1266, 1273 (6th Cir. 1988)).

That general rule is not without exceptions. See, e.g., Seals v. Gen. Motors Corp., 546 F.3d 766, 770 (6th Cir. 2008) (noting exceptions to the rule, including when an amendment is permitted under Rule 15(a) or "when the plaintiff receives notice of the affirmative defense by some other means"). Here, however, Highland never sought to amend the Answer to include the defense of unclean hands; it did not articulate the defense in the Joint Pretrial Order; and there is no evidence that Bennett had notice of the defense by any other means prior to Highland's submission of a request for a jury instruction on unclean hands. The Court finds that Highland waived the defense by not raising it in a timely fashion.

Even if it had not, the evidence presented at trial would not have supported the defense. Unclean hands requires a showing that the party seeking equitable relief is "is guilty of conduct

12

involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." Performance Unltd. v. Questar Publishers, 52 F.3d 1373, 1383 (6th Cir. 1995) (citation omitted). Proof of such behavior must be "clear, unequivocal and convincing." Hoover Transp. Servs., Inc. v. Frye, 77 F. App'x 776, 784 (6th Cir. 2003). The evidence here would not have been sufficient to support a defense of unclean hands even if the defense had been properly raised. Highland is not entitled to a new trial on that issue.

Highland's motion (Doc. No. 275) is **DENIED**.

## V.     Conclusion

To summarize:

1.     Both parties' motions to file reply briefs (Doc. Nos. 281, 287) are **GRANTED**.

2.     Plaintiff's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on Back Pay Damages (Doc. No. 267) are **DENIED**.

3.     Plaintiff's Motion for Liquidated Damages and Pre-judgment Interest (Doc. No. 269) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** insofar as it seeks liquidated damages and **GRANTED IN PART** with respect to the request for prejudgment interest. The Court awards prejudgment interest at the rate of 5% and in the amount of $909.08 on the damages awarded for unjust enrichment.

4. Defendants' Motion for Renewed Judgment as a Matter of Law [sic] (Doc. No. 275) is **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE